UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| MICHAEL T. BRENSTON, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:03 CV 156 |
| v. | ) | |
| | ) | |
| MAYOR DUANE DEDELOW, *et al.,* | ) | |
| Defendants. | ) | |

## MEMORANDUM and ORDER

This matter is before the court on a motion for summary judgment submitted by defendants Mayor Duane Dedelow and the City of Hammond ("defendants") pursuant to FED.R.CIV.P. 56. After carefully reviewing the parties' submissions pertaining to defendants' request for summary judgment, this court, for the reasons expressed in the remainder of this order, shall **GRANT** defendants' motion.

## I. BACKGROUND[1]

The long story of this 42 U.S.C. § 1983 action begins in April 2002, when plaintiff, Michael T. Brenston, Sr., and his family were evicted from their home in Hammond, Indiana. After being evicted, Mr. Brenston instituted a lawsuit against the Hammond Housing Authority ("HHA") in federal court before the Honorable Rudy Lozano (Cause No. 2:02 CV 52), alleging that HHA wrongfully evicted him and his children from their home, that he and his children were slandered, disparaged and treated

---

[1] The first three paragraphs of this section (including the footnotes) are, for the most part, taken verbatim from an order previously issued by this court in the instant action. (*See* Order dated July 26, 2004, docket # 38).

differently than other tenants, and that HHA failed to comply with the terms of his lease by not responding promptly to maintenance requests. On August 8, 2002, Mr. Brenston ultimately signed a document entitled "Release and Settlement of Claim" [hereinafter August 8 Agreement] which released HHA and "all other persons, firms and corporations" from all claims and demands, rights and causes of action of any kind arising out of Cause No. 2:02 CV 52. (*See* Pl.'s Compl., at 6 & Ex. 1[2]). The settlement resulted in the dismissal of Mr. Brenston's suit with prejudice, and final judgment was entered in Cause No. 2:02 CV 52 on August 20, 2002.

On August 19, 2002, just before final judgment was entered in Cause No. 2:02 CV 52, Mr. Brenston filed a complaint with the Department of Housing and Urban Development ("HUD") alleging, as he did in Cause No. 2:02 CV 52, that HHA had falsely evicted him, harassed him, failed to respond promptly to work orders, and discriminated against him and his family. (Pl.'s Compl., Ex. 1). HUD launched an investigation, but soon closed it after learning of the August 8 Agreement releasing HHA from all liability. (Pl.'s Compl., Ex. 1). Nevertheless, the investigation report noted that, notwithstanding the existence of the August 8 Agreement, the investigation did not reveal any evidence in support of the allegations made by Mr. Brenston. (Pl.'s

---

[2] None of the numerous attachments appended to Mr. Brenston's complaint are actually labeled as exhibits. However, the first attachment appearing after the last page of plaintiff's complaint is the attachment (or exhibit) to which the court now refers. What the court has labeled as "Exhibit 1" is a letter containing a copy of the August 8 Agreement which was sent on behalf of the United States Department of Housing and Urban Development ("HUD") to Mr. Brenston.

Compl., Ex. 1).

Finally, on July 7, 2003, after his original complaint in federal court had been dismissed with prejudice pursuant to the August 8 Agreement, and after HUD's investigation determined his claims to be meritless, Mr. Brenston filed, *pro se*, on behalf of himself and his children, the § 1983 action currently pending in this court. Mr. Brenston has named Barbara Knox (Director, Midwest HUB), HUD, HHA, Mayor Duane Dedelow (Mayor of the City of Hammond, Indiana), and the City of Hammond, Indiana as defendants to this action. A liberal reading of the allegations in Mr. Brenston's complaint suggests that Mr. Brenston is, once again, complaining he and his children were wrongly evicted from their home and discriminated against by HHA. (*See* Pl.'s Compl., at 6-8).[3] Mr. Brenston also appears to allege that the August 8 Agreement between himself and HHA was a product of harassment and "extreme duress." (*See* Pl.'s Compl., at 6-8).[4]

Shortly after Mr. Brenston filed his complaint, each of the defendants to this

---

[3] It was somewhat difficult, upon reading Mr. Brenston's complaint, for this court to understand of what exactly he is complaining. Indeed, Mr. Brenston's complaint does not clearly set out any claims. (*See* Pl.'s Compl., at 6-8). Rather, for the most part, the complaint simply records a memory of alleged conversations between Mr. Brenston and HHA's attorney, James J. Krajewski, concerning events surrounding the Brenstons' eviction from their home and the ensuing lawsuits. (*See* Pl.'s Compl., at 6-8). Nonetheless, mindful of the fact that *pro se* pleadings are held to less exacting standards than those prepared by counsel, and that *pro se* pleadings are to be liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *accord McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000), this court has interpreted Mr. Brenston's complaint to present those claims set forth above.

[4] *See supra* note 3 and accompanying text.

action filed various motions pursuant to FED.R.CIV.P. 12 requesting that this court dismiss the complaint against them. Those motions resulted in the dismissal of defendants Knox, HUD, and HHA. (*See* Order dated July 9, 2004, docket # 37 (dismissing Knox and HUD); Order dated July 26, 2004, docket # 38 (dismissing HHA)). However, this court found it necessary to deny the FED.R.CIV.P. 12(b)(6) request for dismissal submitted by Mayor Dedelow and the City of Hammond as their one-sentence motion, which did not contain any facts, explanations, substantive discussion, or supporting authority, was wholly inadequate and did not merit review. (*See* Order dated July 26, 2004, docket # 38, at 7-9).[5] Mayor Dedelow and the City of Hammond have since filed the motion for summary judgment now pending before this court. Mr. Brenston has filed his response to defendants' motion for summary judgment, and defendants' have filed their reply. The court shall now review the merits of defendants' motion.

## II. STANDARD OF REVIEW

Summary judgment is a flexible procedural device which allows district courts to dispose of all or any portion of an action for which a trial is superfluous. *See* FED.R.CIV.P. 56, at Advisory Comm. Notes, 1937 Adoption ("Summary judgment procedure is a method for promptly disposing of actions in which there is no genuine

_____

[5] In the same order denying the FED.R.CIV.P. 12(b)(6) request made by Mayor Dedelow and the City of Hammond, this court chose to dismiss, without prejudice, Mr. Brenston's children as plaintiffs to this action; the court noted that Mr. Brenston could not appropriately bring an action *pro se* on behalf of any of his minor and/or adult children. (*See* Order dated July 26, 2004, docket # 38, at 5-6).

issue as to any material fact."). Rule 56 of the Federal Rules of Civil Procedure governs the summary judgment process and requires that summary judgment be rendered "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is *no genuine issue* as to any *material fact* and that the moving party is entitled to a *judgment as a matter of law*." Fed.R.Civ.P. 56(c) (emphasis added); *accord Gordon v. United Airlines*, 246 F.3d 878, 885 (7th Cir. 2001) ("A grant of summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."). More simply put, Fed.R.Civ.P. 56 mandates an approach in which summary judgment is proper only if there is no reasonably contestable issue of fact that is potentially outcome-determinative. *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1396 (7th Cir. 1997).

When considering a motion for summary judgment, this court must view all inferences in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001). However, the non-moving party may not rely solely upon the allegations made in his complaint, but must present specific facts to show that a genuine issue of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

## III. ANALYSIS

As an initial matter, it is imperative to note that Mr. Brenston's allegations concerning the validity of the August 8 Agreement – i.e., that the August 8 Agreement was exacted under duress, (Pl.'s Compl., at 6) – effectively constitutes a collateral attack upon the judgment entered in Cause No. 2:02 CV 52. Indeed, were this court to declare the August 8 Agreement invalid, then this court would also necessarily be declaring invalid the judgment entered pursuant to that Agreement. *See Miller v. Meinhard-Commercial Corp.*, 462 F.2d 358, 360 (5th Cir. 1972) ("Even though an action has an independent purpose and contemplates some other relief, it is a collateral attack if it must *in some fashion* overrule a previous judgment." (citation omitted) (emphasis added)). Ultimately, Mr. Brenston may not collaterally attack his first lawsuit by bringing a new lawsuit. *Hudson v. Hedge,* 27 F.3d 274, 276 (7th Cir. 1994) (Parties "cannot use a new suit to contend that the disposition of the first was mistaken." (citations omitted)). Such is the case whether the final judgment entered in Cause No. 2:02 CV 52 was correct (because it was the result of a valid settlement agreement), or incorrect (because it was the result of a settlement agreement exacted under duress). *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) (The consequences of a final judgment on the merits are not "altered by the fact that the judgment may have been wrong . . ." (citations omitted)).

The appropriate method for seeking relief from a judgment would be to file a motion specifically requesting such relief in the action in which the judgment was

rendered. *See, e.g., Horwitz v. Alloy Auto. Co.*, 992 F.2d 100, 104 (7th Cir. 1993) (noting that filing new lawsuit was not proper process for attacking judgment which may have been entered erroneously, rather proper process was to file FED.R.CIV.P. 60(b) motion in the case in which judgment was entered). As far as this court can tell, Mr. Brenston has never filed such a motion for relief in Cause No. 2:02 CV 52; and thus, so long as the judgment in that action stands, that judgment, whether valid or invalid, is binding on Mr. Brenston and on this court. *Gunn v. Plant,* 94 U.S. 664, 669 (1876) ("[A judgment] entered in the course of judicial proceedings, of which the court has jurisdiction, [ ] is binding until reversed or set aside . . ."). Accordingly, as Mr. Brenston's claim concerning the August 8 Agreement constitutes an impermissible collateral attack on a prior judgment, the claim is therefore not appropriate for determination in the instant action.[6] Consequently, this summary judgment inquiry shall revolve solely around those claims of discrimination and wrongful eviction underlying this § 1983 action.

    A. *Res Judicata*

    Defendants' first argument for summary judgment centers upon the general idea that Mr. Brenston's previous action against HHA – Cause No. 2:02 CV 52 – precludes Mr. Brenston from litigating the instant lawsuit against Mayor Dedelow and the City of Hammond. In other words, defendants argue that the instant action is barred by the doctrine of *res judicata*. (Defs.' Summ. J. Mem., at 5-8). The doctrine of *res judicata*

_____

    [6] This discussion is not meant to, by any means, invalidate Mr. Brenston's claim that he was bullied into signing the August 8 Agreement. (*See* Pl.'s Compl., at 5-6). Rather, this court expresses no opinion on that claim.

prevents parties or their privies from relitigating issues that were or could have been raised in another, previous action in which there was a final judgment on the merits. *Moitie,* 452 U.S. at 398. In this case, because Cause No. 2:02 CV 52 was brought in federal court, the federal rule of *res judicata* determines whether the doctrine applies to the present action. *In re Energy Coop., Inc.,* 814 F.2d 1226, 1230 (7th Cir. 1987). The three requirements for *res judicata* under federal law are: (1) a final judgment on the merits in the first lawsuit; (2) an identity of the causes of actions; and, (3) an identity of the parties or their privies. *Cent. States, Southeast and Southwest Areas Pension Fund v. Hunt Truck Lines, Inc.,* 296 F.3d 624, 628 (7th Cir. 2002). If any one of these three requirements are not met, then *res judicata* is inapplicable. The court shall now address, in turn, each of these requirements as they relate to the instant action.

First, in order to apply the doctrine of *res judicata* to this case, there must have been a "final judgment" on the merits in the "first" suit instituted by Mr. Bresnton in federal court, Cause No. 2:02 CV 52. *See id.* In Cause No. 2:02 CV 52, Mr. Brenston and HHA entered into a stipulation for dismissal which caused Judge R. Lozano to enter an order dismissing the action with prejudice.[7] For *res judicata* purposes, a stipulation for dismissal resulting in a judgment with prejudice constitutes a final judgment on the

---

[7] The stipulation of dismissal submitted by Mr. Brenston and HHA was predicated upon the August 8 Agreement, (*see* Pl.'s Compl., at 6 & Ex. 1), and stated that all claims presented by Mr. Brenston in Cause No. 2:02 CV 52 had been amicably adjusted, (*see* Cause No. 2:02 CV 52, docket # 38). Based upon this stipulation, the court issued an order dismissing the case with prejudice. (*See* Cause No. 2:02 CV 52, docket # 39).

merits. *Golden v. Barenborg,* 53 F.3d 866, 868-69 & 871 (7th Cir. 1995) (stipulation of dismissal with prejudice was final judgment for *res judicata* purposes); *accord Kraly v. Nat'l Distillers & Chem. Corp.,* 502 F.2d 1366, 1368 (7th Cir. 1974) ("[A] judgment with prejudice entered upon a settlement or compromise is binding as to the parties and their privies." (citation omitted)); *Phillips v. Shannon*, 445 F.2d 460, 462 (7th Cir. 1971) (an order of dismissal with prejudice is a final judgment on the merits). Accordingly, the first requirement for *res judicata* has been met in this case.

Next, in order to trigger the application of *res judicata*, there must exist an "identity of the causes of actions." *See Hunt Truck Lines, Inc.*, 296 F.3d at 628. To determine whether this element has been met, the Seventh Circuit utilizes the "same transaction" test. *Car Carriers, Inc. v. Ford Motor Co.,* 789 F.2d 589, 593 (7th Cir. 1986) (citations omitted). The "same transaction" test requires that the party seeking to invoke the doctrine of *res judicata* demonstrate that the current suit and the previous suit arose out of a "single core of operative facts." *Id.* (citations omitted). Stated another way, "two claims are one for purposes of res judicata if they are based on the same, or nearly the same, factual allegations." *Herrmann v. Cencom Cable Assocs., Inc.,* 999 F.2d 223, 226 (7th Cir. 1993).

Although the long narrative which constitutes Mr. Brenston's complaint in the instant action makes it quite difficult to precisely pin-down his claims, the gist of the narrative seems to be (when read in conjunction with all the complaint's attachments) that Mr. Brenston believes himself to have been the subject of racial discrimination and

as such, he was generally treated very poorly in his housing arrangement and was eventually wrongfully evicted from his home in April 2002. (*See* Pl.'s Compl., at 6-8). These general complaints of discrimination and wrongful eviction are ultimately the same complaints that comprised Mr. Brenston's § 1983 action in Cause No. 2:02 CV 52. (*See* Pl.'s Compl. in Cause No. 2:02 CV 52, docket # 3).

Of course, the basis of HHA's liability in Cause No. 2:02 CV 52 differs slightly from the basis of liability asserted in this action. Indeed, in Cause No. 2:02 CV 52, Mr. Brenston contended that the direct actions of HHA deprived him of his civil rights, (*see* Pl.'s Compl. in Cause No. 2:02 CV 52, docket # 3), whereas in the instant action Mr. Brenston presents a (sort of) *respondeat superior* theory of liability in as far as he argues that defendants are liable under § 1983 for failing to control the direct actions of the HHA, (Pl.'s Compl., at 5). However, this slight difference in the theory of liability means very little in the context of this particular inquiry. *See, e.g., Car Carriers, Inc.,* 789 F.2d at 593 ("[A] mere change in the legal theory" from a previous suit to the current suit "does not create a new cause of action."(quotation marks and citation omitted)). Rather, what is important here are the facts giving rise to the (allegedly different) causes of action. Ultimately, if the same set of core facts forms the basis of both proceedings, then there exists an "identity" between those causes of action. *See Prochotsky v. Baker & McKenzie,* 966 F.2d 333, 335 (7th Cir. 1992) ("Even though one group of facts may give rise to different claims for relief upon different theories of recovery, there remains a single cause of action." (quotation marks and citations omitted)). Accordingly, as the same

10

single core of facts (which involve the events leading up to and surrounding Mr.

Brenston's April 2002 eviction) appear to make up the basis for the identical or nearly

identical claims of discrimination and wrongful eviction asserted by Mr. Brenston in

both the instant action and Cause No. 2:02 CV 52, there thus exists an "identity of the

causes of action," and the second element of *res judicata* is met.

Finally, in order for *res judicata* to apply to this action, the parties in Cause No.

2:02 CV 52 and the instant action must either be identical *or in privity with each other. See*

*Hunt Truck Lines, Inc.*, 296 F.3d at 628. Therefore, although Brenston named only HHA

as defendant in Cause No. 2:02 CV 52, applying *res judicata* in this case might still be

appropriate if privity exists between HHA and Mayor Dedelow and the City of

Hammond. Privity exists between these parties if they are "so closely aligned that they

represent the same legal interest." *Kunzelman v. Thompson,* 799 F.2d 1172, 1178 (7th Cir.

1986) (internal quotation marks and citation omitted); *accord In re L & S Indus., Inc.*, 989

F.2d 929, 932 (7th Cir. 1993) ("Privity is an elusive concept. It is a descriptive term for

designating those with a sufficiently close identity of interests.")

In attempt to show privity between themselves and HHA, defendants note that

under Indiana law, "Housing Authorities are creations of municipalities." (Defs.'

Summ. J. Mem., at 6 (citing IND. CODE § 36-7-18-4(a))). Defendants also point out that,

pursuant to IND. CODE § 36-7-18-5(a)(1), Commissioners of a city Housing Authority are

appointed by the Mayor, and that, under IND. CODE § 36-7-18-8(a)(1), only the Mayor

may remove a Housing Authority Commissioner from office. (Defs.' Summ. J. Mem., at

11

6). Although each of the facts presented by defendants certainly demonstrates that HHA, the Mayor and City are connected on some level, defendants do not bother to explain how this general connection translates into representing the same legal interest, and therefore translates into a finding of privity. Ultimately, under IND. CODE § 36-7-18-14, it appears that Indiana Housing Authorities, like the HHA, are "municipal corporations;" and, as "municipal corporations," Housing Authorities are legal entities separate from the City itself that may sue and be sued in their own name. *See* IND. CODE § 36-1-2-10; *see also* Op. Att'y Gen. No. 89-2 (1989), 1989 WL 264924, at *1-2 (stating that municipal corporations are not departments, boards, commissions or agencies "of the city," but rather are separate political subdivisions that can sue or be sued in their own name). This (apparent) independent legal status suggests that the legal interests of HHA, the City and Mayor Dedelow are *not* so intertwined as to be the "same" for purposes of finding privity.

Yet, the court shall not end its inquiry here as defendants have put forth another argument to demonstrate that they are in fact in "privity" with HHA. Defendants point to the August 8 Agreement, which specifically releases "all [ ] persons, firms and corporations from all claims . . . and causes of action . . . in any way growing out of[ ] any of the allegations [made in Cause No. 2:02 CV 52]," (*see* Pl.'s Compl., Ex. 1), and assert that this language demonstrates the necessary relationship between themselves and HHA to merit a finding of "privity," (Defs.' Summ. J. Mem., at 6-7). However, the court is not quite sure that there really exists a "privity" argument here. Defendants

12

certainly do not explain why or how the release language demonstrates that HHA, Mayor Dedelow and the City of Hammond represent the same legal interests. Rather, defendants take their argument in a different direction focusing on the idea that the language of the general release applies *directly* (versus through privy status) to them. (*See* Defs.' Summ. J. Mem., at 6-7). In other words, defendants argue that the August 8 Agreement directly releases them from the instant lawsuit and, based upon this, they contend that *res judicata* should apply to this action. (*See* Defs.' Summ. J. Mem., at 6-7).

It may indeed be the case that the August 8 Agreement between HHA and Mr. Brenston releases defendants from the instant lawsuit, but such a release is outside the realm of *res judicata.* As already stated, *res judicata* applies only to parties and their privies. *Hunt Truck Lines, Inc.*, 296 F.3d at 628. Mayor Dedelow and the City of Hammond clearly were not parties to the August 8 Agreement, nor do defendants appear to be privies of HHA. Therefore, application of *res judicata* to the instant action (as it relates to Mayor Dedelow and the City of Hammond) would appear to be inappropriate. Although application of *res judicata* is not appropriate here, that does not necessarily mean that defendants' request for summary judgment must be denied. As just noted, defendants have put forth the argument that the general language in the August 8 Agreement releasing HHA and "all other persons, firms and corporations" from any action growing out of those claims presented in Cause No. 2:02 CV 52 applies to them, and thus bars the instant action. (*See* Defs.' Summ. J. Mem., at 6-7). If such is truly the case, if the release language is applicable to defendants, then summary

13

judgment in favor of defendants may indeed be proper as this case undeniably reiterates those claims presented in Cause No. 2:02 CV 52.

     B. *General Release*

     A settlement agreement and release like the August 8 Agreement is ultimately a contract between the parties to the litigation. *Carr v. Runyan*, 89 F.3d 327, 331 (7th Cir. 1996). Such contracts are governed by local contract law. *Id.* Accordingly, this court shall use Indiana law to interpret the August 8 Agreement between HHA and Mr. Brenston and to decide whether Mayor Dedelow and the City were in fact released by that Agreement from any lawsuit arising out of the claims settled in Cause No. 2:02 CV 52.

     Under Indiana law, "release documents shall be interpreted in the same manner as any other contract document, with the intention of the parties regarding the purpose of the document governing." *Huffman v. Monroe County Cmty. Sch. Corp.*, 588 N.E.2d 1264, 1267 (Ind. 1992). The intent of the parties is determined by reviewing the language contained between the four corners of the release so long as that language is plain and unambiguous. *Dobson v. Citizens Gas & Coke Util.*, 634 N.E.2d 1343, 1345 (Ind. Ct. App. 1994). "A release is plain and unambiguous as to who the parties intended to release where its terms provide that all claims are given up against 'all persons' in consequence of [a particular incident]." *Id.* (citation omitted). In other words, language releasing "all persons" does exactly that – releases all persons – as long as "no other terms are contradictory." *Id.*

14

The language of the August 8 Agreement between HHA and Mr. Brenston provides that it releases and discharges:

> the Housing Authority of the City of Hammond . . . and *all other persons, firms and corporations* from all claims and demands, rights and causes of action of any kind that Michael T. Brenston, Sr., or his children, now have or hereafter may have on account of, or in any way growing out of, any of the allegations contained in the complaint filed in [Cause No. 2:02 CV 52].

(Pl.'s Compl., Ex. 1 (emphasis added)). This language is quite clear and unambiguous, and nowhere in the August 8 Agreement is the phrase "all persons, firms or corporations" contradicted. (*See* Pl.'s Compl., Ex. 1) *and compare with Estate of Spry v. Greg & Ken, Inc.*, 749 N.E.2d 1269, 1273 (Ind. Ct. App. 2001) (determining that release at issue contained no language that contradicted the notion that all possible defendants were to be released) *and compare with Huffman*, 588 N.E.2d at 1267 (determining that contradictory language as to who was released from liability precluded summary judgment).[8] Ultimately, the plain language of the August 8 Agreement between HHA and Mr. Brenston makes clear that it releases defendants like the City of Hammond – which is a municipal "corporation" – and Mayor Dedelow – who is, in his official

---

[8] It should also be noted here that not only is the language of the August 8 Agreement clear, unambiguous, and not contradictory as to who it releases, but Mr. Brenston has never once claimed that he did not intend the August 8 Agreement to do just what it says – release all possible defendants from a lawsuit arising out of those claims already presented in Cause No. 2:02 CV 52. Instead, Brenston claims that the release is void because it was exacted under duress. (Pl.'s Compl., at 6-8). However, as already explained above, this court shall not address the validity of the August 8 Agreement because the issue constitutes a collateral attack on the judgment in Cause No. 2:02 CV 52, and therefore is not appropriate for consideration in this lawsuit.

15

capacity, equated to the City, and who is, in his individual capacity, clearly a "person"[9] – from a lawsuit such as this one which presents claims growing out of the discriminatory housing practices alleged in Cause No. 2:02 CV 52. (*See* Pl.'s Compl., Ex. 1). Consequently, this action against defendants is barred by the August 8 Agreement, and summary judgment in favor of defendants is proper. *Cf. Dobson*, 634 N.E.2d at 1345 (summary judgment in lawsuit concerning an auto accident was appropriate in favor of corporate defendant where agreement executed between plaintiff and another party released "all other persons, firms or corporations" from claims arising from auto accident).[10]

## IV. CONCLUSION

For the foregoing reasons, this court hereby **GRANTS** the motion for summary judgment (docket # 41) submitted by Mayor Dedelow and the City of Hammond. As a counterclaim asserted by Hammond Housing Authority remains pending, the Clerk shall await further instruction from this court before entering final judgment and

---

[9] The complaint does not specify whether Mr. Brenston seeks to sue Mayor Dedelow in his individual or official capacity. (*See generally* Pl.'s Compl.). However, for purposes of the instant discussion, it makes no difference. The language of the August 8 Agreement releases Mayor Dedelow either as an individual "person," or as Mayor of the City of Hammond (and therefore part of the municipal "corporation") from any suit arising from any of the allegations contained in the complaint filed in Cause No. 2:02 CV 52. (*See* Pl.'s Compl., Ex. 1).

[10] As summary judgment in favor of defendants appears appropriate on the ground that the August 8 Agreement releases defendants from the instant action, this court shall not consider any of the remaining arguments raised by defendants in support of their motion for summary judgment.

terminating this action.

**SO ORDERED.**

**Enter**: September 7, 2005

\_\_s/James T. Moody_____
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT